## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
## EASTERN DIVISION

| | | |
|---|---|---|
| CODY PETERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Case No. |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| UNITED STATES FISH & WILDLIFE | ) | |
| SERVICE; PAUL SOUZA, in his official | ) | |
| capacity as Acting Director of the U.S. | ) | |
| Fish & Wildlife Service; MATT HOGAN, | ) | |
| in his official capacity as Regional | ) | |
| Director, Mountain-Prairie Region of the | ) | |
| U.S. Fish & Wildlife Service; UNITED | ) | |
| STATES DEPARTMENT OF INTERIOR; | ) | |
| DOUG BURGUM, in his official capacity | ) | |
| as Secretary of the U.S. Department of | ) | |
| the Interior, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

### INTRODUCTION

1.    Plaintiff Cody Peterson is a farmer and landowner in LaMoure County, North Dakota. He brings this challenge to Defendant U.S. Fish and Wildlife Service's ("the Service") interpretations—first articulated in 2020 and 2024—of a 1963 easement ("Easement 69X") owned by Defendant United States of America and managed by the Service on property Mr. Peterson owns and leases from his family.

2.    Easement 69X is one of many wetland conservation easements the Service acquired in the early 1960s on farms in the Prairie Pothole region of the upper

Midwest. Prior to 1976, however, the deeds of easements prepared by the Service—including the deed for Easement 69X—did not describe what wetlands they covered on a property. *See United States v. Johansen*, 93 F.3d 459, 461 (8th Cir. 1996). As a result, "there has been a considerable amount of confusion regarding what the earlier wetland easements actually covered." *Id.* at 463.

3.     In 2020, the Service issued a guidance memo to address the confusion over these easements. United States Department of Interior, Fish and Wildlife Service, *Drain Tile Setbacks and Legal Action on U.S. Fish and Wildlife Services Wetland Easements* (Feb. 26, 2020) ("2020 Guidance").[1] Pursuant to the memo, the Service informed landowners and farmers that it would issue estimates of what it believed to be the scope of existing wetland easements and how it would calculate where farmers could install drain tile on their encumbered properties.

4.     On February 24, 2020, the Service issued a map of the properties at issue that showed what the agency believed Easement 69X covered. Mr. Peterson objected to the map, arguing that the map did not reflect what wetlands existed on the property at the time the easement was conveyed. Mr. Peterson exhausted his administrative appeals and, eventually, the Director of the Service upheld the map as issued.

5.     In 2024, the Service promulgated a final rule interpreting the scope of these wetland easements ("2024 Rule"). National Wildlife Refuge System; Drain Tile Setbacks, 88 Fed. Reg. 26244 (Apr. 28, 2023) (to be codified at 50 C.F.R. pt. 25). The

---

[1] https://www.fws.gov/sites/default/files/documents/Guidance-Memo-Drain-Tile-Setbacks-Wetland-Easements.pdf.

rule severely restricts farmers' ability to make their land farmable and states that *any impact*—no matter how minor—on a purported wetland is a violation of the terms of the easements. But North Dakota law and the common law generally recognize that the owner of property encumbered by an easement may use his or her property in a reasonable manner even when such use minimally impacts an easement holder.

6.    The 2020 map and the 2024 Rule misinterpret Easement 69X's location and scope and unlawfully restrict the amount of land Mr. Peterson can farm. Mr. Peterson brings this Quiet Title Act and Administrative Procedure Act challenge to the Service's interpretation of Easement 69X to ensure that the Service does not unlawfully and unreasonably restrict Mr. Peterson's use of his farmland.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 USC § 1346(f) and 28 U.S.C. § 2409a (Quiet Title Act), 28 U.S.C. § 1331 (federal question jurisdiction), and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA).

8.    Venue in the District of North Dakota is proper under 28 U.S.C. §1402(d) and 28 U.S.C. § 1391 (b)(2), because the easements in which an interest is claimed by the United States are located in North Dakota and a substantial part of the events giving rise to the claims occurred in North Dakota.

## PARTIES

### Plaintiff

9.      Plaintiff Cody Peterson is a citizen of the United States and resident of LaMoure County, North Dakota. He owns half of the property at issue and is the lessee of the rest of property at issue located at 1004 3rd Street, Marion, North Dakota 58466, as further described below.

### Defendants

10.     Defendant United States of America owns a 1963 Easement for Waterfowl Management Rights that burdens the properties at issue.

11.     The United State Fish & Wildlife Service ("the Service") is an agency of the Department of the Interior. The Service is divided into eight different management regions across the United States. Under the Migratory Bird Hunting Stamp Act of March 16, 1934, as amended, the Service has used funds from the sale of Federal Duck Stamps to purchase wetland easements from private property owners in the upper Midwest, including from Mr. Peterson's predecessor in interest. In 2024, the Service promulgated the final rule that is the subject of this action that sets out its interpretation of these wetland easements.

12.     Paul Souza is the Regional Director of the Service's Pacific Southwest Region, and is currently exercising the delegated authority of the Director of the Service. The Director of the United States Fish and Wildlife Service is charged with managing longstanding organizational responsibilities of the Service. In that capacity, the Director oversees the Service's administration of the Waterfowl

Production Area Program. The Director issued the March 25, 2021, appeal decision affirming the 2020 wetland map at issue in this case. Mr. Souza is sued in his official capacity as the Acting Director of the Service.

13.    Matt Hogan is the Regional Director of the Mountain-Prairie Region of the United States Fish and Wildlife Service. As Regional Director, he is responsible for the administration and management of the Service in North Dakota, South Dakota, Nebraska, Kansas, Colorado, Utah, Wyoming, and Montana. Mr. Hogan is sued in his official capacity.

14.    The United States Department of the Interior is an agency of the United States and responsible for the management of most federal lands in the United States. The Department, through the Fish and Wildlife Service, manages the Waterfowl Production Area lands and wetland easements that are the subject of this action.

15.    Doug Burgum is the Secretary of the United States Department of Interior. As Secretary, he oversees the agencies within the Department, including the Fish and Wildlife Service. Mr. Burgum is sued in his official capacity.

## LEGAL AND FACTUAL BACKGROUND

### Cody Peterson and the Property at Issue

16.    Cody Peterson is the owner of property in LaMoure County, North Dakota described as "NW 1/4, Sec. 2, T136N, R61W, less Auditor's Lot 2-1 recorded as Doc. No. 163163, located and being a part of said Northwest Quarter." Mr. Peterson

acquired the property by warranty deed on February 26, 2008, and recorded by the LaMoure County Recorder on February 27, 2008, as Document Number 163374.

17.     Mr. Peterson is also the lessee of 140 acres of property in LaMoure County, North Dakota described as "SW 1/4, Sec. 2, T136N, R61W" and also known as parcel number 12-0203000. He began leasing the property in 2018 and will continue leasing the property for the foreseeable future.

18.     The SW 1/4 property is owned by Patty J. Peterson and Leonard A. Peterson as Trustees of the Patty J. Peterson Trust. The property was acquired by Leonard A. Peterson and Patty J. Peterson, as individuals, by warranty deed on February 27, 2008, and recorded by the LaMoure County Recorder on February 29, 2008, as Document Number 163382. The property was then granted to Patty J. Peterson and Leonard A. Peterson as Trustees of the Patty J. Peterson Trust by quit claim deed on January 21, 2022, and recorded by the LaMoure County Recorder on March 15, 2022, as Document Number 180261.

19.     Easement 69X at issue was granted from the Petersons' predecessors on November 15, 1963, and accepted by the United States on April 22, 1964. The Easement covers the West 1/2 of Sec. 2, T136N, R61W.

20.     The Service's summary record for Easement 69X notes the following information: "Easement Consideration: $630.00; Tract Acreage: 327.73; Cost per acre: $1.92; Wetland Acreage 42.00; Wetland cost per acre: $15.00; Estimate of Value: $630.00."

21.     On February 18, 2020, the Service sent a letter to Cody Peterson with an enclosed map which the Service said was its "effort to depict the approximate sizes, shapes and locations of all wetland areas protected by the provisions of the easement."

### **Prairie Pothole Easements**

22.     Easement 69X is one of many held by Defendant United States of America and managed by Defendant U.S. Fish & Wildlife Service in the "Prairie Pothole" region of the Upper Midwest.

23.     Prairie potholes are depressional wetlands that were formed by glacial melt following the Pleistocene era. Some of these wetlands are permanently filled with water, but others simply flood during wet periods and are naturally dry for most of the year. Defendants consider even small depressions—comprising less than one-tenth of an acre—that are dry nearly the entire year, as prairie potholes.

24.     During the early 1960s, Defendant U.S. Fish and Wildlife Service acquired conservation easements over many prairie potholes, including Easement 69X.

25.     Like with Easement 69X, all easements acquired before 1976 these easements did not describe where they applied or what "wetlands" they covered. *See Johansen*, 93 F.3d at 461.

26.     The only clue to how much land was governed by these easements was an agreement between the Governor of North Dakota and the Service that 1.5 million

acres had been encumbered. *Id.* This was because the statute allowing the Service to acquire these easements required consent of the state involved. *See id.*

27.    "Since 1976, [the Service] has recorded a map locating the covered wetland acres as part of every easement document. However, as a consequence of the former practice and the fact that prairie potholes, by nature, are ill-defined and subject to fluctuation, there has been a considerable amount of confusion regarding what the earlier wetland easements actually covered." *Id.* at 463.

28.    Despite not being part of the easements, the Service later published an easement summary for each tract of land, which purported to identify the covered wetlands and the acreage subject to the easement on each tract. *Id.* at 462.

29.    The United States has routinely indicted and prosecuted farmers in North Dakota for allegedly draining wetlands subject to these easements. *See id.* at 463.

## 2020 Guidance

30.    In 2020, in response to the legal uncertainty concerning the Service's wetland easements and the growing use of drain tile on farmlands with such easements, the agency issued a guidance memo titled *Drain Tile Setbacks and Legal Action on U.S. Fish and Wildlife Services Wetland Easements*, (Feb. 26, 2020) ("2020 Guidance").

31.    The 2020 Guidance informed landowners that the Service would issue estimates of what it believed to be the scope of existing wetland easements and calculate where farmers could install drain tile on their encumbered properties.

32.    The 2020 Guidance stated that when the Service works with a landowner to design a tile installation plan, the Service's actions should aim to protect the wetland areas from drainage without needlessly restricting activities on the remainder of the easement.

33.    The 2020 Guidance stated that when the landowner coordinated their tile planning with the Service, and adhered to Service-provided setback distances, the Service would not pursue legal action if it is later determined that the distances are inadequate to protect wetland areas from drainage.

34.    According to the 2020 Guidance, if a landowner did not follow Service-provided setback distances, or changed the tiling parameters on which setback calculations are based, and drainage of the protected wetland occurred, the Service would request that tile within the setback distances be removed to restore the affected wetland area.

35.    The 2020 Guidance specified that the Service would use the van Schilfgaarde equation to calculate where farmers could install drain tiles. The van Schilfgaarde equation was developed to determine the effect of drainage systems on water table drawdown in saturated soil conditions.

**Fish and Wildlife Service's Wetland Map of Mr. Peterson's Property**

36.    On February 18, 2020, Wetland District Manager Wayne Henderson sent a letter to Mr. Peterson with an enclosed map that "represents the U.S. Fish and Wildlife Service's effort to depict the approximate sizes, shapes and locations of all wetland areas protected by the provisions of the easement [Easement 69X.]"

37.    The February 18, 2020, letter informed Mr. Peterson that if he disagreed with the map he could object to the map by writing to District Manager Henderson and subsequently he could appeal the map to the Service's Regional Director and then to the Director.

38.    On April 3, 2020, Mr. Peterson sent a letter objecting to the 2020 map.

39.    Included in that objection was a "Wetland Easement Review" conducted by Wenck Associates, Inc. This document summarized Wenck's findings after conducting a historic aerial photograph review of Mr. Peterson's property. Wenck concluded that the 2020 map did not accurately reflect the wetlands that existed at the time Easement 69X was conveyed and recommended specifics on how the 2020 map should be revised.

40.    The Service made no changes after the objection.

41.    Mr. Peterson appealed to the Regional Director and, after no changes were made to the 2020 map, Mr. Peterson appealed to the Director of the Fish and Wildlife Service on August 7, 2020.

42.    On March 25, 2021, the Director issued a decision affirming the previous decisions and upholding the 2020 map.

43.    A copy of Mr. Peterson's appeal to the Director of the Service—which includes as attachments the previous appeal documents and decisions, a copy of the Wenck Wetland Easement Review, and the 2020 map—is attached as Exhibit A. A copy of the Director's Decision is attached as Exhibit B.

44.    The Director's March 25, 2021, decision is final agency action.

## 2024 Rule

45.    On May 13, 2024, the Service issued a final rule entitled "National Wildlife Refuge System; Drain Tile Setbacks." 89 Fed. Reg. 41336 (May 13, 2024). The rule states that the Service "promulgate[d] new regulations pertaining to wetland easements to bring consistency, transparency, and clarity for both easement landowners and the Service in the administration of conservation easements[.]" *Id.*

46.    Despite stating that "the guidance memo remains in full effect" the 2024 Rule issues regulations that are inconsistent with the 2020 Guidance. *Id.* at 41339.

47.    For example, while the 2020 Guidance stated that the purpose was to protect wetlands from drainage, the 2024 Rule lays out a much stricter purpose.

48.    Specifically, the final rule states that "[t]he regulations we are adopting in this final rule provide clarity and certainty to landowners that drain tile may be installed on lands encumbered by a wetland easement provided that protected wetland areas are not drained, directly or indirectly." *Id.* at 41337.

49.    The rule further states that it "distinguishes Service wetland easements from the 'Swampbuster' provisions of the Food Security Act of 1985 (also known as the 'Farm Bill'; Pub. L. 99-198), which allow drain tile to have a 'minimal effect' to wetlands." *Id.* Instead, the 2024 Rule codifies the Service's position that "wetland easement agreements with landowners include provisions that allow for no effect; hence, drain tile may be installed on a wetland easement tract, but it is a violation of the easement contract if the result is that the tile drains a protected wetland area." *Id.*

50.    The final rule also distinguishes itself from the 2020 Guidance by not committing to any specific process to calculate the setback distances. The 2024 Rule does not specify a calculation process because "[i]ncluding the calculation processes of the Service's guidance memo in the regulations, however, would not be in the interest of the Service or landowners." *Id.* at 41341.

51.    Instead, the rule states that "the Service has codified our obligation to use the best available science in regulation and will then keep our publicly available, detailed internal guidance up-to-date and effective." *Id.*

## Quiet Title Act

52.    The Quiet Title Act (QTA) provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights." 28 U.S.C. § 2409a(a).

## Administrative Procedure Act

53.    The Administrative Procedure Act ("APA") provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

54.    Pursuant to the APA, a court must set aside agency action that fails to meet statutory, procedural, or constitutional requirements; or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A)–(D).

## FIRST CLAIM FOR RELIEF
### Quiet Tile of Easement's Scope
### (QTA, 28 USC § 1346(f) and 28 U.S.C. § 2409a)

55.     Mr. Peterson incorporates by reference the allegations set forth in the preceding paragraphs.

56.     "An easement is an interest in land consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose." *Krenz v. XTO Energy, Inc.*, 890 N.W.2d 222, 231 (N.D. 2017). Grants of interests in land are interpreted in like manner with contracts in general. N.D.C.C. § 47–09–11. Contracts are construed to give effect to the mutual intention of the parties at the time of contracting. *Krenz*, 890 N.W.2d at 231.

57.     The Service's easements are limited in scope and do not extend to non-wetland portions of one's property. "As the easement agreements make clear, however, the restrictions apply only to wetlands areas and not to the entire parcels." *North Dakota v. United States*, 460 U.S. 300, 311 n.14 (1985). "This obviously means that the restrictions mentioned in the easement agreements do not apply to portions of property, which, although included within the easements' legal description, do not meet the definition of a wetland as expressed in the easement agreements." *United States v. Vesterso*, 828 F.2d 1234, 1242 (8th Cir. 1987).

58.     The 2024 Rule states that the Service can limit activity on non-wetland portions of the property, despite not having an easement over those portions.

59.     The Eighth Circuit has already rejected a previous Service interpretation that "any action that would inhibit the collection of water in a

particular depression would violate its interest in existing and future wetlands." *Johansen*, 93 F.3d at 466.

60.    In *Johansen*, the court looked to "traditional norms of real property conveyance" and held that, in order for a property owner to be liable for violating the easement, the government must prove that "*covered* wetlands (as existing at the time of the easement's conveyance and described in the Easement Summary) were damaged[.]" *Id.* at 466–67.

61.    According to the 2024 Rule, "Service wetland easement agreements with landowners include provisions that allow for *no effect*; hence, drain tile may be installed on a wetland easement tract, but it is a violation of the easement contract if the result is that the tile drains a protected wetland area." 89 Fed. Reg. at 41337 (emphasis added).

62.    By stating that drain tiles must have "no effect," the 2024 Rule goes beyond protecting wetlands, or the Service's easement rights, and advances an interpretation that is inconsistent with traditional norms of real property conveyance.

63.    At common law, "the holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." Restatement (Third) of Property (Servitudes) § 4.9 (2000). Likewise, "the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment." *Id.* at § 4.10. "In resolving conflicts among the parties to servitudes, the public policy favoring socially productive use of

land generally leads to striking a balance that maximizes the aggregate utility of the servitude beneficiary and the servient estate." *Id.* at cmt. b.

64.    The Service's interpretation of its easements, set forth in the 2024 Rule, preventing normal farming practices which have even minimal effect on the Service's easements, results in unreasonable interference with the enjoyment of the servient estate. Regular farming practices are a reasonable use of farmland encumbered by an easement. Indeed, the language of the conservation easements contemplate that farming will continue.

65.    When a farmer installs drain tiles, and the Service's easements are only minimally affected, the Service's enjoyment of the servitude is not impaired. Federal regulations elsewhere recognize that farming practices which may have a minimal effect on wetlands, like installing drain tiles, are still consistent with the preservation and protection of wetlands.

66.    The Service's interpretation of its rights under the easement thus fails to strike a balance that maximizes the aggregate utility of protecting wetlands and allowing normal farming practices and is not a reasonable interpretation of the scope of its easements.

67.    The 2024 Rule's interpretation of its easements is also its interpretation of the scope of Easement 69X.

68.    The Service's 2024 interpretation of Easement 69X unlawfully expands the scope of the easement beyond what was granted in the deed.

69.     Mr. Peterson is thus entitled to a judgment quieting title to the properties at issue with respect to Easement 69X that confirms that the easement does not require Mr. Peterson to use property he owns or leases in a way that results in "no effect" to any wetlands on the property.

70.     Mr. Peterson is also entitled to a judgment quieting title to the properties at issue with respect to Easement 69X that confirms that Defendants may not cause unreasonable damage to his property or unreasonably interfere with Mr. Peterson's use and enjoyment of the property he owns or leases.

## SECOND CLAIM FOR RELIEF
### Quiet Tile of Easement's Size
### (QTA, 28 USC § 1346(f) and 28 U.S.C. § 2409a)

71.     Mr. Peterson incorporates by reference the allegations set forth in the preceding paragraphs.

72.     Restrictions contained in Service waterfowl production area easements—like Easement 69X—only apply to wetland areas on the property at the time the easement was conveyed and do not apply to fluctuating, after-expanded or after-developed wetland areas. *Johansen*, 93 F.3d at 465–66 (citing *North Dakota v. United States*, 460 U.S. 300).

73.     Restrictions contained in FWS waterfowl production area easements are also limited, at a maximum, to the number of acres that FWS noted it paid the landowner for in the summary record. *Johansen*, 93 F.3d at 465–66.

74.     Easement 69X does not have a negotiated and agreed-upon map between FWS and the grantor, or any other landowner, showing the areas that are subject to the easement's restrictions.

75.    In accordance with the terms of the easement and applicable law, Easement 69X does not cover any after-expanded or after-developed wetland areas.

76.    As the Wenck Wetland Easement Review demonstrates, the 2020 wetland map does not accurately reflect the size and scope of Easement 69X.

77.    Specifically, the 2020 wetland map purports to cover wetlands that did not exist at the time the easement was granted and purports to cover more area than was authorized at the time the easement was granted

78.    Mr. Peterson is entitled to a judgment quieting title the properties at issue with respect to Easement 69X that confirms that Defendant United States of America only has an easement over those wetlands that existed at the time the easement was granted, and no more, as articulated in the Wenck Wetland Easement Review.

## THIRD CLAIM FOR RELIEF
### Service's 2020 Wetland Map of Peterson Property
### (APA, 5 U.S.C. § 706(2))

79.    Mr. Peterson incorporates by reference the allegations set forth in the preceding paragraphs.

80.    The Director's March 25, 2021, decision is the Service's final agency action with respect to the 2020 wetland map.

81.    Mr. Peterson exhausted all available administrative remedies challenging the 2020 wetland map.

82.    The 2020 wetland map is based on aerial photos taken after Easement 69X was conveyed and covers wetlands that did not exist at the time the easement was conveyed.

83.     In creating the 2020 wetland map, the Service unlawfully relied on the 2016 Prairie Pothole Region Easement Manual, a manual created decades after Easement 69X was conveyed.

84.     Thus, the Service's 2020 wetland map is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## FOURTH CLAIM FOR RELIEF
### 2024 Rule's Unlawful Expansion of Easement
### (APA, 5 U.S.C. § 706(2))

85.     The 2024 Rule advances an interpretation of the Service's wetlands easements that exceed the scope of the Service's rights under those easements.

86.     Namely, the 2024 Rule codifies the Service's position that "wetland easement agreements with landowners include provisions that allow for no effect[.]" 89 Fed. Reg. at 41337.

87.     By stating that drain tiles must have "no effect," the 2024 Rule goes beyond protecting wetlands, or the Service's easement rights, and advances an interpretation that is inconsistent with traditional norms of real property conveyance.

88.     The 2024 Rule is thus arbitrary, capricious, in abuse of discretion, or otherwise not in accordance with law.

## FIFTH CLAIM FOR RELIEF
### Failure to articulate standards for determining setbacks in 2024 Rule
### (APA, 5 U.S.C. § 706(2))

89.     Mr. Peterson incorporates by reference the allegations set forth in the preceding paragraphs.

90.     An agency's articulation of a standard to guide its decision-making is essential to reasoned administrative decision-making. This rule derives from the requirement that an agency identify a rational connection between the facts found and the decision made. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

91.     Unlike the 2020 Guidance, the 2024 Rule does not set out a standard for calculating drain tile setbacks.

92.     Thus, the 2024 Rule is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

1.     A judgment quieting title to the properties at issue with respect to Easement 69X that confirms that the easement does not require Mr. Peterson to use the property he owns and leases in a way that results in "no effect" to any wetlands on the property.

2.     A judgment quieting title to the properties at issue with respect to Easement 69X that confirms that Defendants may not cause unreasonable damage to Mr. Peterson's property or unreasonably interfere with Mr. Peterson's use and enjoyment of property he owns or leases.

3.     A judgment quieting title to the properties at issue with respect to Easement 69X that confirms that Defendants only have an easement over those

wetlands that existed at the time the easement was granted, and no more, as articulated in the Wenck Wetland Easement Review.

4.    An order declaring that, in creating the 2020 map, Defendants acted arbitrarily, capriciously, abused their discretion, or otherwise failed to act in accordance with law.

5.    An order holding unlawful and setting aside the 2020 map and the Director's decision affirming the 2020 map.

6.    An order declaring that in promulgating the 2024 Rule, Defendants acted arbitrarily, capriciously, abused their discretion, or otherwise failed to act in accordance with law.

7.    An order declaring that Defendants may not interpret their wetlands easements in a manner that causes unreasonable damage to the servient estate or interferes unreasonably with its enjoyment.

8.    An order declaring that Defendants may not interpret their wetlands easements in a way that requires the servient estate to act in a way that results in "no effect" to any wetlands on the property.

9.    An order holding unlawful and setting aside the 2024 Rule.

10.    Any other relief the Court deems just and proper under the circumstances of this case.

DATED: April 8, 2025.

Respectfully submitted,

s/ Jeffrey W. McCoy

JEFFREY W. MCCOY
Email: jmccoy@pacificlegal.org
Pacific Legal Foundation
1745 Shea Center Dr., Ste. 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

AUSTIN W. WAISANEN
Email: awaisanen@pacificlegal.org
Pacific Legal Foundation
508 17th Street
Cody, WY 82414
Telephone: (307) 213-0511

*Attorneys for Plaintiff*