# Exhibit B



United States Department of the Interior

FISH AND WILDLIFE SERVICE
Washington D.C. 20240



Mr. Kale R. Van Bruggen
Rinke Noonan Law Firm
Suite 300 US Bank Plaza
1015 W. St. Germain St.
P.O. Box 1497
St. Cloud, MN 56301

**MAR 2 5 2021**

LaMoure 69X

Dear Mr. Van Bruggen,

I'm writing in response to your August 10, 2020, written appeal, made on behalf of your client, Cody Peterson, of the wetland map developed by the U.S. Fish and Wildlife Service (Service) for the following property: T. 136 N., R. 61 W., 5th P.M. Section 2, W1/2 for easement contract LaMoure 69X. In the 1963 easement conveyance agreement and documents, the summary acres for LaMoure 69X are 42 acres. In your appeal, you requested that the Service either remove or resize mapped wetland areas to reflect the maps you submitted in your appeal.

For my investigation into your case, we reviewed the signed 1963 easement conveyance agreement and the Easement Summary for LaMoure 69X, the easement maps, your easement appeal package, aerial photographs, case law, and Service manuals. In review of the Refuge Manager's and Regional Director's decisions, we understand that the Refuge Manager removed three areas and the Regional Director resized six areas. So, in further evaluation of your appeal, we assessed the process used in delineating the maps, and considered input from the Refuge Manager, the Service's Realty Specialists, and Solicitors within the Department of the Interior. We also reviewed multiple aerial images, taken at various seasons of the year from 1957 through 2019.

Aerial photographs, both from before and after easement acquisition, are accessible at the websites below:

- World Imagery from ESRI: http://goto.arcgisonline.com/maps/World Imagery.
  Sources (Attributed to Esri, DigitalGlobe, GeoEye, Earthstar Geographies, CNES/ Airbus Defense and Space, U.S. Department of Agriculture, U.S. Geological Survey, AeroGRID, IGN, and the GIS User Community).
- The USDA Geospatial Data Gateway site contains National Agriculture Imagery Program (NAIP) imagery, soils, digital raster graphics, public land survey, hydrography, landcover, roads, etc.: https://gdg.sc.egov.usda.gov/.
- The National Wetlands Inventory point, line and polygon data are available from the U.S. Fish and Wildlife Service National Wetlands Inventory Mapper: https://www.fws.gov/wetlands/Data/Mapper.html.

Based on the evaluation of the information submitted in your appeal and the factors described below in the Service's mapping process, I am unable to grant your appeal to remove or adjust Service-mapped wetland areas. Therefore, the Service maintains 41.5 acres mapped for LaMoure 69X.

In 1958, the Migratory Bird Hunting Stamp Act of March 16, 1934, was amended to meet the Congressional intent for acquisition of wetlands via easements to protect small wetlands and potholes to

**APR 0 1 2021**

provide suitable areas for waterfowl production. About two years ago, the Service began an initiative to expedite the mapping of pre-1976 wetland easements to provide transparency and certainty to landowners regarding the delineation of the U.S. government's property interest on their lands in the Prairie Pothole Region. We acknowledge the history and the controversy that is sometimes associated with these easements; for that reason, an administrative appeals process was instituted to ensure the Service listened to landowners and considered their information and evidence before finalizing our decision. Each pre-1976 wetland easement map must meet the following legal criteria:

(1) mapped areas are wetland areas as defined in the signed easement conveyance document;
(2) wetland areas existed at the time the easement was conveyed (*United States v. Vesterso*, 828 F.2d 1234 (8th Cir. 1987);
(3) total mapped wetland area is at or below the acreage identified in the easement summary (*e.g., United States v. Peterson*, 632 F.3d 1038 (8th Cir. 2011); *United States v. Johansen*, 93 F.3d 459, 463 (8th Cir. 1996)); and
(4) mapped areas maintain the full extent of the property interest acquired by the United States (31 U.S.C. § 1301(a); 17 Comp. Gen. 791 (1938); 5 C.F.R. 2635.704; *e.g. Maiatico v. United States*, 302 F.2d 880 (D.C. Cir. 1962)).

In addition to satisfying the legal criteria, the Service must also consider biological factors, such as the availability of food resources and brooding habitat for waterfowl. Together, the legal and biological factors define the methodology used in mapping the Service's wetland easements.

Your appeal was not granted for the following reasons:
- **Claim: Objection to the Service's use of aerial photography taken after the time the easement was conveyed.** The Service's technique to use multiple maps to verify characteristics of wetlands was determined to be appropriate in *United States v. Mast.*, 4:14-CR-40078-01-KES (D.S.D. May 21, 2020). The court held that the Service's comparison of aerial photographs from before and after an easement's conveyance is an acceptable and reliable method of establishing the existence of wetland areas at the time the easement was conveyed. *Mast*, p. 10, 13, 49 (D.S.D. May 21, 2020) (citing *Peterson*, 632 F.3d at 1041 (finding that the use of aerial photography and expert testimony amounted to substantial evidence that the wetlands existed at the time of conveyance)). Furthermore, the courts confirmed that wetland areas in the Prairie Pothole Region formed during glaciation will continue to exist unless destroyed (*North Dakota v. United States*, 460 U. S. 300, 304 n. 4 (1983); *Mast*, 4:14-CR-40078-01-KES, p. 13)). The Service's use of a suite of aerial photographs provides a more accurate identification of wetland basins created by glaciation, rather than solely relying on the location or extent of surface water which varies across seasons and years.
- **Claim: Objection to the Service's use of multiple aerial photographs.** In investigating this appeal, the Service used multiple aerial photographs at various seasons of the year. The photographs consistently depict marked characteristics of depressions of the surface, basins, surface water, marsh vegetation, or combinations. The maps submitted in your appeal used aerial photographs from only three years: 1952, 1964 and 1969. That selectivity discounts the ability to ascertain the existence or size of the wetland, because an emphasis is placed on the varying precipitation and other climatic conditions rather than the characteristics or signatures of the wetlands. The easement conveyance agreement describes the wetland areas protected by the easement were not necessarily those that had water in them at the time of conveyance referencing wetlands protected as those "now existing or *reoccurring* due to natural causes" (*Mast*, 4:14-CR-40078-01-KES, p. 34 (stating "courts have found that the United States is not required to prove precise water levels as they existed [at the time of conveyance]")). The Service's objective is to

produce a precise map that aligns with the characteristics and signatures of wetlands, and to accomplish that we examine multiple aerial photographs to accurately ascertain a wetland.

- **Claim: Objection to the Service's map and request the Service to the realign map to the map provided in the appeal.** You requested the Service adopt the wetland maps you provided in your appeal. As described, the Service used legal criteria and biological factors to delineate the Service maps, including aerial imagery from multiple years and photographs from the time near the conveyance. Aerial photographs from the 1950s to present confirm that surface water or marsh vegetation reoccurs in the approximate wetland area locations as mapped by the Service.
- For the property at T. 136 N., R. 61 W., 5th P.M. Section 2, W1/2 the Service's mapped acreage for the easement is within the acres identified in the Easement Summary in compliance with case law (*United States v. Johansen*, 93 F.3d 459, 463 (8th Cir. 1996)). The Easement Summary lists 42 acres for 69X, while the Service's wetland acreage mapped is 41.5 acres.

Upon receiving your appeal, my team and I investigated the methods used by the Service, case law, Service policies, and the evidence you presented in reaching a decision as to the delineated wetlands covered by the easement on your property. I am committed to evaluating your case and every case using the law and science. This decision is considered the final agency action on this map. If you have any questions about the enclosed easement contract or map, including what is and is not allowed on protected wetland areas, please contact the Refuge Manager, Wayne Henderson, at 1 First Street SW, P.O. Box E, Kulm, North Dakota 58456; (701) 647-2866; kulmwetlands@fws.gov.

Sincerely,

*Martha Williams* (signature)

Martha Williams
Senior Advisor to the Secretary
Exercising the Delegated Authority of the Director
U.S. Fish and Wildlife Service

CC:   Cody Peterson

(69X)

3-1916
Rev. 1963

# UNITED STATES DEPARTMENT OF THE INTERIOR
## U. S. FISH AND WILDLIFE SERVICE
## BUREAU OF SPORT FISHERIES AND WILDLIFE
### CONVEYANCE OF EASEMENT FOR WATERFOWL MANAGEMENT RIGHTS

THIS INDENTURE, by and between Lyle H. Trapp and Vivian Trapp, his wife, of Marion, North Dakota,

parties of the first part, and the UNITED STATES OF AMERICA, acting by and through the Secretary of the Interior or his authorized representative, party of the second part.

WITNESSETH:

WHEREAS, section 4 of the Migratory Bird Hunting Stamp Act of March 16, 1934, as amended by section 3 of the Act of August 1, 1958 (72 Stat. 486, 16 U.S.C., sec. 718d (c)), authorizes the Secretary of the Interior to acquire small wetland or pothole areas suitable for use as waterfowl production areas:

WHEREAS, the lands described below contain or include small wetland or pothole areas suitable for use as waterfowl production areas:

NOW, THEREFORE, for and in consideration of the sum of six hundred/thirty Dollars ($630.00), the parties of the first part hereby convey to the United States, commencing with the acceptance of this indenture by the Secretary of the Interior or his authorized representative which acceptance must be made within—six—months of the execution of this indenture by the parties of the first part, or any subsequent date as may be mutually agreed upon during the term of this option, an easement or right of use for the maintenance of the land described below as a waterfowl production area in perpetuity, including the right of access thereto by authorized representatives of the United States: T. 136 N., R. 61 W., 5th P.M., N. Dak., LaMoure Co.

section 2, W½

Subject, however, to all existing rights-of-way for highways, roads, railroads, pipelines, canals, laterals, electrical transmission lines, telegraph and telephone lines, and all outstanding mineral rights.

The parties of the first part, for themselves and for their heirs, successors and assigns, covenant and agree that they will cooperate in the maintenance of the aforesaid lands as a waterfowl production area by not draining or permitting the draining, through the transfer of appurtenant water rights or otherwise, of any surface water including lakes, ponds, marshes, sloughs, swales, swamps, or potholes, now existing or reoccurring due to natural causes on the above-described tract, by ditching or any other means; by not filling in with earth or any other material or leveling, any part or portion of the above-described tract on which surface water or marsh vegetation is now existing or hereafter reoccurs due to natural causes; and by not burning any areas covered with marsh vegetation. It is understood and agreed that this indenture imposes no other obligations or restrictions upon the parties of the first part and that neither they nor their successors, assigns, lessees, or any other person or party claiming under them shall in any way be restricted from carrying on farming practices such as grazing, hay cutting, plowing, working and cropping wetlands when the same are dry of natural causes, and that they may utilize all of the subject lands in the customary manner except for the draining, filling, leveling, and burning provisions mentioned above.

### SPECIAL PROVISIONS

1. This indenture shall not be binding upon the UNITED STATES OF AMERICA until accepted on behalf of the United States by the Secretary of the Interior or his authorized representative, although this indenture is acknowledged by the parties of the first part to be presently binding upon the parties of the first part and to remain so until the expiration of said period for acceptance, as hereinabove described, by virtue of the payment to parties of the first part, by the UNITED STATES OF AMERICA, of the sum of One Dollar, the receipt of which is hereby expressly acknowledged by parties of the first part.

2. Notice of acceptance of this agreement shall be given the parties of the first part by certified mail addressed to Lyle H. Trapp at Marion, North Dakota, and such notice shall be binding upon all the parties of the first part without sending a separate notice to each.

3. The parties of the first part warrant that no person or selling agency has been employed or retained to solicit or secure this contract upon agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the vendors for the purpose of securing business. For breach or violation of this warranty the United States shall have the right to annul this contract without liability or in its discretion to deduct from the contract price or consideration the full amount of such commission, percentage, brokerage, or contingent fee.

Contract No. 14-16-0003- 7222

69X

4. It is further mutually agreed that no Member of or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this contract, or to any benefit to arise thereupon. Nothing, however, herein contained shall be construed to extend to any incorporated company, where such contract is made for the general benefit of such incorporation or company.

5. Payment of the consideration will be made by Disbursing Officers check after acceptance of this indenture by the Secretary of the Interior or his authorized representative, and after the Attorney General or in appropriate cases, the Field Solicitor of the Department of the Interior shall have approved the easement interest thus vested in the United States.

IN WITNESS WHEREOF the parties of the first part have hereunto set their hands and seals this 15th day of November, 1963

_____ (L.S.)
Lyle H. Trapp

_____ (L.S.)
Vivian Trapp

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)
(Witness)

_____ (L.S.)

## ACKNOWLEDGEMENT

STATE ____North Dakota____ )
                            ) ss
COUNTY OF ____Stutsman____  )

On this 15th day of November, in the year 1963, before me personally appeared Lyle H. Trapp and Vivian Trapp, his wife, known to me to be the persons described in and who executed the foregoing instrument and acknowledged to me that they (he) executed the same as their (his) free act and deed.

_____
                      Notary Public
(SEAL)                (Official Title)

My commission expires  10-10-69

## ACCEPTANCE

This indenture is accepted on behalf of the United States this ____ day of APR 22 1964, 19____, under the authority contained in section 4 of the Migratory Bird Hunting Stamp Act, as amended, and pursuant to authority delegated by 210 DM 1.3, Commissioner of Fish and Wildlife Order No. 4, and 4 AM 4.5D(1).

THE UNITED STATES OF AMERICA

By _____W. P. Schaefer_____

(Title) __Acting Regional Director__
         Bureau of Sport Fisheries and Wildlife 24180

69X
T 136 N. R 61 W.
SECTION 2, W1/2

LaMoure County, North Dakota



Scale: 1:10,560

0   0.1   0.2   0.4   0.6   0.8   1
Miles

The U.S. Fish & Wildlife Service (Service) has purchased and owns a perpetual easement which restricts the rights to drain, burn, fill or level any wetland areas depicted on this map. This map represents the Service's effort to depict the approximate sizes, shapes, and locations of all protected wetland areas and is not intended to depict water levels in wetland areas for any given year. Wetland area acre estimates are provided to demonstrate that mapped wetland areas are consistent with the acres for which the Service paid. Any other interpretation of the estimated wetland area acreages may lead to a mischaracterization of the easement conveyance. A permit is required from the Service before conducting activities that result in the draining, burning, filling or leveling of wetland areas identified on this map.



Section Boundary

Boundary of Easement Description

Wetland Areas Covered by Provisions of the Easement

Data Sources: Farm Service Agency: NAIP Imagery 2019, USFWS: Easement Boundary, BLM: Public Land Survey System (Sections). Map Date: 7/07/2020